(21 Misc. Rep. 48.)

### GLOBE v. RAUCH et al.

(Supreme Court, Appellate Term. July 29, 1897.)

1. EVIDENCE—HEARSAY.
   Testimony of witness that he inquired at an address given by plaintiff as his residence, and was told by some one there that plaintiff did not live there, is hearsay.

2. DISTRICT COURT—JURISDICTIONAL AMOUNT.
   Under Code Civ. Proc. § 3215, subd. 1, giving a district court jurisdiction where the sum claimed in the complaint does not exceed $250, plaintiff having claimed only that sum, jurisdiction is not affected by the judgment being for more, but the excess may be waived.

3. CLAIM BOND—ACTION ON—EVIDENCE.
   In an action on a bond given by a claimant of attached goods to obtain release thereof, evidence as to payment of the indebtedness to plaintiff is irrelevant, the issue being solely as to ownership of the goods.

Appeal from First district court.

Action by Max Globe against Adolph Rauch and others on bond given under Code Civ. Proc. § 2912, by claimant to plaintiff in attachment. From a judgment for plaintiff, defendants appeal. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Charles T. Schampain, for appellants.
Louis Levy, for respondent.

BISCHOFF, J. In an action brought by this plaintiff against one Jacob Schlacht for goods sold and delivered, an attachment was issued against the stock contained in the latter's grocery store, and a levy was made December 8, 1896. Claiming ownership of this stock, one Augusta Greenspan and one Morris Weinstein obtained possession of the property and its release from the attachment, by furnishing a bond, as provided for by section 2912 of the Code of Civil Procedure, which section reads as follows:

"If a person, not a party to the action, claims any property attached, * * * he may, at any time after the seizure, and before execution is issued upon a judgment rendered in the action, execute and file with the justice, a bond to the plaintiff * * * in a penalty at least twice the value of the property claimed; and conditioned that, in an action upon the bond, to be commenced within three months thereafter, the claimant will establish that he was the general owner of the property claimed, at the time of the seizure; or, if he fails so to do, that he will pay to the plaintiff the value thereof, with interest. The constable must thereupon deliver the property claimed to the claimant."

The action against Schlacht proceeded to judgment for the plaintiff, and this action was thereupon brought, in proper season, against the sureties upon the bond, these defendants. Both by the terms of the statute and by the wording of the bond in suit, the burden was upon the defendants to prove that Greenspan & Weinstein were the owners of the goods attached at the date of the levy, and, after hearing a considerable amount of testimony upon the subject, the justice has decided the issue in favor of the plaintiff.

It appears to us that the record fully authorized a determination that the defendants had not satisfactorily sustained the burden of proof in this regard, and the judgment is unassailable. It was shown that for some time prior to the 5th of December, 1896, Schlacht was openly the owner of the stock contained in the store conducted by him at No. 204 Rivington street; but during the period of three days which elapsed between that date and the date of the levy of the attachment, December 8th, several transactions took place touching this stock, which transactions, with the circumstances surrounding them, furnished the matter for this litigation. On the 5th of December, Schlacht made a bill of sale of all the stock and fixtures in the store to one Mysel, for the stated consideration of $888; and it was testified by Mysel that he had actually paid $388, and had canceled two promissory notes of Schlacht, aggregating $500, for the balance. Mysel, on the same day, transferred the chattels in question to Mary Schlacht, a sister of Jacob Schlacht, in consideration of $1,000, by a bill of sale, which acknowledged the receipt of $112, and called for payment of the balance of $888 in monthly installments of $60, for the default in payment of any one of which installments title was to revert to the seller, and the bill of sale to become null and void. On December 7th, Mary Schlacht made a bill of sale to Greenspan & Weinstein, the consideration, as set forth, being $800, actually paid at the time of delivery, and the two last-named persons testified that they had made the payment in cash. From certain affirmative evidence, from the nature of these transactions, and from matter brought out upon cross-examination of the defendants' witnesses, it was well within the province of the justice to find that Greenspan & Weinstein's possession of these goods at the date of the levy was not obtained through a bona fide transfer, but only in the course of an endeavor by Schlacht to defraud his creditors. Schlacht appeared to be continuously about the store after he had ostensibly disposed of his right, title, and interest in it, and the element of change of manual possession—a constituent generally of a bona fide sale—was absent. Weinstein testified that Schlacht "worked there," and Greenspan, the husband and general agent of Augusta Greenspan, testified that he hired him; but, in view of the circumstances, the fact of his presence was suspicious, and these witnesses gave interested testimony, which it was for the justice to credit or not, in his discretion. From all the evidence the justice could well have drawn an inference that Schlacht remained in possession after these purported transfers of the goods, and so, unless the proof showed that Greenspan & Weinstein really acted in good faith in the matter,

the transaction was presumptively fraudulent and void as against creditors, and thus could not suffice as a basis for the claim of ownership as made.

As to the transfer by Schlacht to Mysel, there was evidence of an admission made by Schlacht to one Kline that he had thus disposed of the property to escape his creditors, or, as he expressed it, "to do you all"; and, also, it was testified that Mary Schlacht had admitted that she had paid nothing to Mysel upon the assignment of the property to her. The fact that Mary Schlacht purchased the goods from Mysel at an advance of $112 upon the price paid by the latter to Schlacht on the same day, according to the purport of these bills of sale, certainly seemed improbable, the relations of this brother and sister being apparently cordial, and there being no necessity for the sister's losing this sum to a stranger's profit. Then, again, it was not clearly made to appear why Mary Schlacht desired to make the purchase, since she had not been at the store for six weeks previous to the sale, and had no knowledge of the extent of the business, nor of the value of the stock. As to the connection of Greenspan & Weinstein with the matter, the fact that they were purchasers in good faith was far from apparent. It is said that they actually paid Mary Schlacht $800, as consideration for the transfer of the goods to them by her; yet they had seen her bill of sale from Mysel, and so must have known that the title which she had to offer was dependent upon her payment to Mysel of $888, in monthly installments, and, against her default in this, they were absolutely unprotected. That the payment of $800 was really made, under these circumstances, is well-nigh incredible. The testimony of Weinstein and of Aaron Greenspan, the party who appeared throughout for Augusta Greenspan, was, moreover, unsatisfactory, and the answers given upon cross-examination were in many instances evasive, or, at least, not calculated to impress the justice favorably. We conclude that there was no impropriety in the finding that the claim of ownership was not supported by the preponderance of the evidence.

Objection was made to the jurisdiction of the court, upon the ground that the plaintiff was not a resident of the judicial district, it being shown and apparently conceded that the defendants were not such residents; but there is no force in the contention, since the justice was certainly authorized to accept the plaintiff's testimony that he was a resident. To contradict the plaintiff upon this point, the defendants called a witness who, during recess of the court, had inquired at the address given by the plaintiff as that of his residence, and had been told by some person upon the premises that the plaintiff did not live there. Testimony to this effect, when offered, was excluded, and the defendants took an exception; but clearly the exclusion was proper, since the evidence was merely hearsay.

Further objection to the jurisdiction was based upon the fact that the judgment obtained in the action against Schlacht, representing the full amount of the defendants' liability upon their bond to the plaintiff, was excessive of $250; but it was competent to the plaintiff to waive the excess, and, since he claimed no more than $250, the court had jurisdiction. Code Civ. Proc. § 3215, subd. 1.

Exception was taken to the exclusion of certain receipted bills, rendered by the plaintiff to Schlacht, and said by the latter to cover all the goods which the plaintiff had ever delivered to him. The question of Schlacht's indebtedness to the plaintiff, however, was concluded by the judgment upon which this action was founded, and the matter was irrelevant to the issue before the court, which was solely as to the ownership of the goods released from attachment upon the giving of the bond in suit. Certain other exceptions were taken to rulings upon evidence, but they are not found to merit discussion.

Judgment affirmed, with costs. All concur.